QUICK *et al. v.* STATE.

(Division A. June 25, 1923.).

[96 South. 737. No. 23465.].

1. JURY. *Court held authorized to quash jury box and panel for irregularities in selection of names.*

Where a large number of persons whose names were placed in jury box had served during the two previous years and the box contained over eight hundred names contrary to Code 1906, section 2689 (Hemingway's Code, section 2181), and the names were not selected in proportion to qualified electors in each

supervisor's district, it was within the trial judge's province and discretion to quash the jury box and panel drawn therefrom.

2. JURY.  *Quashing of jury box and panel held largely in trial court's discretion.*

The quashing of the jury box and venire drawn therefrom, for gross irregularities in making up the jury box, was largely a matter within the trial court's judicial discretion.

APPEAL from Circuit court of Lauderdale county.

HON. C. C. MILLER, Judge.

Johnnie Quick and another were convicted of keeping and maintaining a gaming house, and they appeal. Affirmed.

*Parker, Snow & Snow,* for appellant.

The appellants in this case indicted by the grand jury of Lauderdale county, in August, 1922, were charged jointly with unlawfully keeping and maintaining a common gaming house. At the February Term, 1923, of the circuit court of Lauderdale county, the defendants were convicted and given the maximum sentence of the law. At the opening of this term of court, and before any case had been called for trial, and before the jurors then present and waiting, had been empanelled, the district attorney and the county attorney, filed a motion before the court to quash the entire jury list, containing the names of jurors drawn for service at the present term of court, and also to quash the jury box from which said jurors names were drawn, basing the motion on the alleged illegality of the jury box from which the jury list was drawn, predicating said alleged illegality upon fraud in the selection of the names placed in the jury box by the several members of the board of supervisors. The motion to quash was sustained by the court, the judge specifically finding that there was no fraud in the selection of the jury or of the names in the jury box, but that some of the jurors had served within the two years next preceding this term of

court, and that there had been more than eight hundred names placed in the jury box for the year, without an order of the presiding judge. The court then directed the sheriff to select a certain specific number of men for jury service from each beat in the county, using the poll book to select his names from. The ruling of the court was excepted to by the defendants, and a motion by them made objecting to the selecting of a jury other than from the list prepared by the board of supervisors, and also objecting to the method by which the sheriff was ordered to select the jury to try defendants. This motion was overruled by the court, to which ruling defendants excepted.

By section 2180, Hemingway's Code, the board of supervisors are required to make a selection of those from whom the jurors for the ensuing twelve months are to be selected and by this provision are the supervisors each invested with a certain amount of discretion as to the men to serve from their particular neighborhood. It is the supervisors who determine the fitness of the juror, as to his intelligence, judgment, and character, and this, we believe, as stated by this court in *Cook* v. *State,* 43 So. 620, is the only place in the law upon the subject of juries where it is given to any one to exercise judgment in the selection of jurors, this power being limited even to this one body in a very limited way. Even after giving the discretion to the board of supervisors of selecting and placing in the jury box those whom they considered fit and qualified, the legislature, to make sure there should be no hand-picking, provided for drawing by lot from that number of men recommended, just before they were to be used, enough men to act at a given term of court. By this drawing by lot the inviolate right of a fair trial by a fair jury was intended to be preserved to the litigants.

Section 2211, Hemingway's Code, providing that "All the jury provisions of law in relation to the listing, drawing, summoning and empanelling of juries are directory merely," has been under review of this court sev-

eral times, and has been construed to mean that the man-
ner of selecting the names for jury service by the board of
supervisors was directory, and not mandatory. By this
section then, the discretion of the board of supervisors
was, in fact, enlarged so that if they made up their lists
for jury service substantially according to the plan and
scheme prescribed by law, their lists would be valid and
lawful, and such as was intended by law for the trial of
cases before our courts. *Bond* v. *State*, 91 So. 461; *Sim-
mons* v. *State*, 68 So. 913; *McVey* v. *State*, 78 So. 150;
*Cook* v. *State*, 43 So. 619; *Sheppard v. State*, 42 So. 544.
But the trial judge found names had been listed by the
board of supervisors of parties who had been called as
jurors within the two years next preceding 1923, ap-
parently contrary to section 2176, Hemingway's Code.
There was no testimony, however, that any man listed by
the board of supervisors had served at either of the terms
of court next preceding the February, 1923, term, and we
insist that said statute is directory. Even in the light of
sections 2179 and 2180, Hemingway's Code, we submit
that the finding of names selected by the board of super-
visors, of men selected by them before, was not sufficient
to warrant a quashing of the jury box, and getting rid of
the men already in the court room ready for service. The
Legislature seems, with care, to have deliberated over this
very matter and to have intended the selection and use of
such men, for it is provided in every instance that when
there is a deficiency of jurors these parties, even though
they have served within two years, must serve again. The
law provides for twenty weeks of circuit court in this coun-
ty. The terms of court regularly require a great number of
jurors, to say nothing of the special venires. There was
no irregularity even in the names of jurors who had served
within two years being placed on the jury list by the mem-
bers of the board of supervisors. If they had served on
regular panels the two preceding terms they were subject
to challenge for cause and if there was a deficiency of

jurors, as sworn to by the supervisors, they were subject to jury duty and should have been drawn. The fact that when there was a deficiency and some of the same parties were drawn indicates the supervisors selecting them were convinced of the particular party being fitted to serve his country.

But the state relied also on the fact that the jury box contained when filled something like nine hundred names. We concede it did. This court held in *Simmons* v. *State,* 68 So. 913, the fact the jury box contained less than two hundred names was not grounds to quash the box, so we rely content upon that case. We take it to be conclusive there was no fraud. The court found, as a matter of fact, no fraud had been proved, his finding, in part, being as follows: "I do not intimate, and do not charge that the board committed a fraud in placing these names in the box, but I do say that the law has not been complied with, etc." But if there was no fraud, how could the court quash the jury box and direct his sheriff to select a jury to try the cases before the court. At the time this motion was before the court, as shown by the motion, the *venire facias* had been issued, and the jurors were in the court room awaiting their duties. Section 2209, Hemingway's Code, provides: "A challenge to the arrray shall not be sustained except for fraud, nor shall any *venire facias,* except a special *venire facias* in a criminal case be quashed for any cause whatever." The leading case of *Cook* v. *State,* 43 So. 622, and the case of *Campbell* v. *State,* 17 So. 441, will be found to support our contention that to warrant the court in quashing the jury box there must be a finding of fraud.

But the state contends we show no prejudice, nor that we did not have a fair jury. To that we answer, appellants were confronted by a "hand-picked" jury, by which we mean a jury picked by a single man, which man belonged to the prosecuting arm of the court. He knew the name of every man he selected before he selected him, and

no doubt knew the tenor of the minds of the men he selected. The judge directed him to get a certain number of men from each beat, which was contrary to law, and these jurors were brought to try these defendants in an atmosphere charged and sur-charged with the idea of a jury selected which the state did not want, having been dismissed, and they having been sent for to take the place of those men discharged and designated as being undesirable to the district attorney and the county attorney. It was held in *Eddins* v. *State,* 70 So. 898, that every jury was not a fair and impartial jury just because the defendant was unable to show specifically wherein he had been prejudiced by any particular juror on his panel. See also, *Magnus* v. *State,* 60 So. 8; *Miller* v. *State,* 84 So. 161; *Lewis* v. *State,* 45 So. 360. Further, there being no jury before the court, the court could not of its own motion, organize a jury, save in the special cases provided for by statute. 1 Chitty's Cr. Law, 518; Bac. Abr., tit. "Jury," C. & D.; *Williams* v. *The Commonwealth,* 91 Penn. State, 493; *Rogers* v. *State,* 33 Ind. 543; *Bradley* v. *State,* 45 Ind. 67; *Randron* v. *New Orleans,* 15 La. 160; *Fuller* v. *State,* 1 Blacks. 63; *Emerick* v. *Sloan,* 18 Iowa, 139; *Hill* v. *State,* 42 So. 380; and we have no statute covering the exact case here presented.

*H. T. Odom,* Assistant Attorney-General, for the state.

For the convenience of the court, with circuit clerk Rush's evidence as a basis, I have prepared a table which will reveal startling facts as to the acts of the board of supervisors in filling the jury box. This detailed information is as follows:

Brief for appellee.                    [132 Miss.

Table Showing Registered Voters in Lauderdale County
by Beats, Numbers Placed in Jury Box by Board
of Supervisors in January, 1923, and the
Irregularities Therein.

| Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 | Col. 7 |
|---|---|---|---|---|---|---|
| Beat | Qualified Electors | Percentage of Electors of County | If Jury Box contained 800 number allowed each beat | Number actually put in jury box | Variance from legal number allowed | Number included who had served during past two years |
| One | 5000 | 73.4% | 587 | 432 | Deficiency 155 | |
| Two | 278 | 4. | 32 | 100 | Excess 68 | 50 40 44 90 |
| Three | 700 | 10.2 | 82 | 127 | Excess 45 | |
| Four | 371 | 5.4 | 43 | 149 | Excess 106 | 22 5 19 46 |
| Five | 460 | 7. | 56 | 107 | Excess 41 | 71 8  79 |
| Total | 6809 | 100 | 800 | 915 | Excess 115 | |

The several members of the board of supervisors took the stand in defense of their action in the premises, denied they were guilty of any fraud and claimed they had acted in perfectly good faith. However, they did not dispute the facts testified to by Mr. Rush, but on the contrary admitted same to be true. Their explanation for putting more than eight hundred names in the jury box was given as an oversight; their reason for failure to apportion the numbers placed in the jury box to the several districts according to the registered voters therein, they say, was because the jury box was generally depleted before the end of the year; and their excuse for placing names of persons in the box who had served during the past two years was because

of a deficiency of persons qualified for jury service in their respective districts. The trial court refused to compel the several supervisors to state how many registered voters in their respective districts were not qualified for jury service. After hearing the evidence the trial court sustained the motion to quash, holding that the jury box had been improperly and illegally filled, and ordered both the panels summoned and the jury box for the year quashed, and further ordered that the clerk of the court issue *venire facias* directed to the sheriff commanding him to summon qualified persons to serve as grand and petit jurors for said term of court.

I. The trial court properly quashed the regular venire and the illegal jury box because of the following glaring irregularities in filling the jury box by the board of supervisors: (1) The jury box contained nine hundred and fifteen names. Section 2181 of Hemingway's Code, section 2689, Code of 1906, fixes the number of names to be placed in the jury box between the limits of two hundred and eight hundred. This provision of the law was disregarded without plausible or justifiable excuse. (2) There was a flagrant violation by the supervisors of section 2180 of Hemingway's Code, section 2688, Code of 1906, in that, said supervisors did not select persons from the several supervisors' districts in proportion to the number of qualified electors in each. While our court has held in a number of cases, that our jury laws are directory and not mandatory, I am not in complete accord with this construction of the provisions of the foregoing statute which we find in the following terms: . . . "and shall take them as nearly as they conveniently can, from the several supervisors' districts in proportion to the number of qualified persons in each." It occurs to my mind that the legislature by using the word "shall" in this connection, considered it highly important that this provision be strictly complied with in order that a representative jury in all cases might be obtained. If this statute be directory only,

132 Miss.—51

the word "shall" has no function to perform here. The pro-
vision would have been equally as clear by omitting same.
I cannot believe this word as used here, is without force
and effect.   It is clear on the other hand, that by employ-
ing this instrument of expression, which would not be
easily misunderstood, the legislature intended to prescribe
an additional safeguard to prevent a fraudulent selection
of prospective jurors by the several boards of supervisors.
(3)   Another inexcusable irregularity which cannot be
harmonized with an honest and fair endeavor to carry out
the spirit and purpose of our jury laws as disclosed by
the record, was the failure of the board of supervisors to
exclude from the jury box "all who had served on the
regular panel within the last two years."   This shows a
shameful disregard of the mandate of section 2180, Hem-
ingway's Code, section 2688, Code of 1906.

.While the record discloses that one of the supervisors
purposely excluded negroes who were qualified electors
from the jury box, and this of itself would be sufficient to
quash the jury box, under *Farrar* v. *State,* 90 Miss. 509,
45 So. 619; *Hill* v. *State,* 89 Miss. 23, 43 So. 380; *Lewis* v.
*State,* 91 Miss. 505, 45 So. 360, because in violation of the
Federal Constitution, we do not wish to rely on this point
but hereby expressly waive same.

Counsel for appellant contend that since all our jury
laws are directory and not mandatory, nothing less than
actual fraud would warrant the quashing of the jury box.
Their argument is principally based on section 2209, Hem-
ingway's Code, same being section 2716, Code of 1906.   A
complete answer to the foregoing statute is section 2211 of
Hemingway's Code, same being section 2718 of the Code
of 1906.   While the trial court very charitably stated that
he did not charge the supervisors with fraud, the judge
would have been properly charged with a dereliction of
duty if he had failed to quash the jury box under the cir-
cumstances shown by the record.   As above stated, the
action of the board of supervisors as disclosed by this

record is inconsistent with a conscientious performance of duty and cannot be reconciled with the principles upon which our jury laws are founded. It amounts to a fraud in law and the court was clearly and eminently correct in its ruling. *Head* v. *State,* 44 Miss. 731, discusses the authority of the circuit court in the selection of juries. In practically all of the adjudicated cases that have come to my attention where our court refused to reverse the judgment of the lower court because of irregularities on the part of the board of supervisors, the appellants were complaining because the trial court had refused to quash the jury. But there are no cases holding that it was not within the power of the trial court. In the case at bar, there was ample justification for quashing the jury. I concede that under all the cases reversible error cannot be predicated on the failure of the trial court to quash because of irregularities, but I most respectfully insist that the converse of this proposition is not true unless there should appear a clear abuse of the discretion vested in the trial court. As suggested above, in order to warrant the trial court in quashing the jury box, it is not required to show that fraud had been committed in fact, but it is sufficient if the facts show such a willful disregard of the jury laws as will amount to a fraud in law. This is the holding of our court in the case of *Cook* v. *State,* 90 Miss. 137, 43 So. 618.

The trial court was clearly right in quashing the jury box, and the panel summoned therefrom. This is unquestionably true under the law and facts in this case. And after this had been done, it was then the duty of the trial court to proceed under section 2207, Hemingway's Code, section 2714, Code of 1906, to have the sheriff summon the requisite number of persons qualified as jurors to serve as such. Our court in construing the foregoing section in the case of *West* v. *State,* 80 Miss. 710, held that where the jury boxes are exhausted and a special *venire facias* is directed to the sheriff, commanding him to summon jurors,

it is no objection to the venire that the sheriff, acting in good faith, with the aid of a deputy, selected the names of an equal number of qualified electors from each supervisor's district of the county, using the registration and assessment rolls in so doing, and caused the jurors so selected to be summoned. See *Tolbert* v. *State,* 71 Miss. 191.

The case of *Simmons* v. *State,* 109 Miss. 605, 68 So. 913, is also relied on by counsel for appellant. We think that this case and all other cases holding that our jury laws are directory and not mandatory, are authorities for our contention, for the reason that this rule applies with equal force to the actions of the trial court as well as to the board of supervisors.

Finally, if it be conceded that the action of the trial court could by strained construction of the law, be considered error, then it was harmless error and resulted in no injury to appellants. They were entitled to a trial by a fair and impartial jury and nothing more. See case of *Tolbert* v. *State, supra.* It is not contended that the jury convicting was not a fair and impartial jury. The record does not show that they used a single peremptory challenge or challenged any member of the array for cause. In *Purvis* v. *State,* 71 Miss. 706, the trial court quashed an array because of the obstinacy of the board of supervisors in failing to follow the plain mandate of the law. This court sustained the action of the lower court in that regard. In my opinion the decision in the Purvis case upholds the action of the trial court in the case at bar. See also *Posey* v. *State,* 86 Miss. 141, 38 So. 324.

Argued orally by *E. L. Snow* for appellants and *H. T. Odom,* Assistant Attorney-General, for the State.

HOLDEN, J., delivered the opinion of the court.

The appellants, Quick and Moore, were convicted of the offense of keeping and maintaining a gaming house in the city of Meridian.

The appellants present and urge several errors for reversal, the main ones being that the proof in the case was not sufficient to sustain the verdict of the jury, and that the court erred in quashing the jury panel and the jury box on motion of the district attorney.

We have carefully reviewed the testimony in the case, and the instructions given and refused by the court, and it is our judgment the proof is sufficient to sustain the charge, and that there is no reversible error in the rulings of the court.

On the point made that the court erred in quashing the regular venire of fifty men, and quashing the jury box, on motion of the district attorney, we are of the opinion the action of the court in this regard was not error.

It appears from the record that when the criminal term of the circuit court was convened a regular venire of fifty men had been summoned and were present, from which the grand and petty juries were to have been selected. At this juncture the district attorney moved the court to quash the venire and the jury box. The reasons assigned on the motion were that the jury box from which the panel had been drawn was illegal, in that the board of supervisors in filling the box and not followed the statutes on the subject and were guilty of numerous gross and flagrant irregularities, constituting legal fraud therein.

By leave of the court the board of supervisors filed answers denying the allegations of the motion. The state introduced the circuit clerk, whose testimony on the motion disclosed gross irregularities on the part of the board in selecting the names to go in the jury box. The supervisors offered testimony denying that they were guilty of actual fraud, but were acting in good faith. They did not, however, dispute the facts testified to by the clerk as to the flagrant irregularities, but admitted the facts testified to as being true.

We shall here state some of the irregularities practiced by the board in filling the jury box. From beat 5, where

there were four hundred and sixty-five male qualified electors, one hundred and seven were placed in the box for the year 1923, and out of that one hundred and seven, seventy-nine had served either during the year 1921 or 1922. In beat 4 there were three hundred and seventy-five qualified electors, and out of this number one hundred and forty-nine were put in the box, and out of that one hundred and forty-nine men ninety-two had served during the two previous years. In beat 2, one hundred out of two hundred and seventy-eight qualified male electors were placed in the box for 1923, and out of this one hundred names, ninty-six had served in the two previous years. These irregularities were in violation of the statute with reference to the selection of jurors and filling the jury box.

It appears also that the jury box contained nine hundred and fifteen names, whereas the statute (section 2181, Hemingway's Code; section 2689, Code of 1906) fixes the number of names to be placed in a jury box between the limits of two hundred and eight hundred; the trial court not having ordered a greater number than eight hundred to be placed on the list.

The record also discloses a gross violation of section 2180, Hemingway's Code (section 2688, Code of 1906), in that the supervisors did not select persons from the several supervisors' districts in proportion to the number of qualified electors in each.

Upon this evidence heard by the court it was ordered that the panel and the box be quashed because of the gross irregularities amounting to fraud in law.

While it is true this court has held the jury laws are merely directory and that the venire will not be quashed for mere irregularities, yet where the irregularities are so gross and flagrant as to result in legal fraud the judge is within his province and discretion to quash the panel and the jury box in such cases, and his action will not be disturbed.

In the case of *Head* v. *State,* 44 Miss. 731, in discussing

the authority of the circuit court in the selection of juries, it was said:

"It is the duty of the court to superintend the selection of the jury, in order that it may be composed of fit persons; large discretion must be confided to the court in the performance of this duty; nor will the action of the circuit court in this behalf be the subject of review here, unless some violation of law is involved, or a gross and injurious exercise of discretion is shown. The primary objects is to insure a fair, unbiased jury. *Brown* v. *Gilliam, Ex'r,* 43 Miss. 641. The objection to the special venire is not well taken."

In *Cook* v. *State,* 90 Miss. 137, 43 So. 618, this court said:

"In order to warrant the court in quashing a jury box, it is not enough to show that it would be possible for names to be substituted for the list prepared by the board of supervisors; but the testimony must in fact show that a fraud has been committed, or show such flagrant violation of the jury laws as that the acts proven would constitute a fraud in law."

The action of the trial judge in quashing the jury box and the venire drawn was largely a matter within his judicial discretion after hearing the facts showing the gross irregularities practiced by the supervisors in making up the jury box. And there is ample authority holding that, since the court secured a fair and impartial jury for the trial of the defendant by summoning other jurors as provided by the statutes, the defendant cannot complain of the conviction because, after all, he received a fair and impartial trial. *Simmons* v. *State,* 109 Miss. 605, 68, So. 913; *Tolbert* v. *State,* 71 Miss. 191, 14 So. 462, 42 Am. St. Rep. 454; *Purvis* v. *State,* 71 Miss. 706, 14 So. 268; *Posey* v. *State,* 86 Miss. 141, 38 So. 324, 4 Ann. Cas. 221.

The judgment of the lower court is affirmed.

*Affirmed.*